UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-218 (DSD/DTS)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CHARLES EDWARD FIELDS,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and Charles Edward Fields (hereinafter referred to as the "Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the Defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. The Defendant fully understands the nature and elements of the crime with which he has been charged. At the time of sentencing, the United States agrees to move to dismiss the remaining charges against him in the Indictment.

2. **Factual Basis**. The Defendant is pleading guilty because he is in fact guilty of Count One of the Indictment. In pleading guilty, the Defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

1

The Defendant was the owner and operator of a series of companies through which he pitched employment opportunities to prospective workers throughout the United States. The employment opportunities that the Defendant purported to provide were through his businesses, some of which included HOMESoft Systems Incorporated, WaterTek Marketing Corporation, Water Innovations Group, Inc., W I G Holdings Corporation, Mile High H20 Corporation, and the NEW H20. From Minnesota, the Defendant operated his businesses successively from at least 2015 until at least 2020.

The Defendant claimed that, after job applicants paid him an upfront deposit or fee, then he would purportedly hire them as sales contractors to sell products nationwide to the public, primarily, selling home security or water filtration systems. The Defendant represented that he would provide his workers with secure and lucrative employment with guaranteed training, sales support, and compensation, among other things.

Beginning in or around 2015, and continuing until at least in or around 2020, the Defendant carried out a scheme to defraud at least 250 individuals throughout the United States whom he had hired ostensibly as sales contractors. The purpose of the scheme was for the Defendant to unjustly benefit himself by receiving upfront deposits from his newly hired sales contractors, even though the Defendant thereafter provided his victimized workers with little, if any, of the promised training, support, equipment, or compensation.

As part of his fraudulent scheme, the Defendant provided contractors with materially false and fraudulent information about their employment opportunities, which he typically provided through phone calls, online postings, email messages, and through recorded audio messages. For instance, through online platforms such as Craigslist, the Defendant routinely posted employment advertisements targeted to locations throughout the country. These job postings typically claimed that individuals hired as supposed sales "group presenters" would earn a base monthly salary of $5,000 or, in other instances, would earn $6,000 in guaranteed monthly profit. At other times, the Defendant's online advertisements claimed that his workers would supposedly receive $100,000 in their first year. The Defendant also promised that he would provide to his sales contractors training as well as provide them with all sales leads and the arrangement of all sales presentations. However, in reality, and as the Defendant knew full well, most of the individuals who accepted job offers from him were subsequently left with an employment opportunity that never materialized as promised by the Defendant.

As further part of the scheme, the Defendant required his new hires to pay him an initial deposit of approximately $3,000 to $5,000. This deposit, in part, was purportedly required to pay for training materials and a prototype product, such as a water filtration system, that the contractors would ostensibly use to demonstrate to prospective customers. However, despite paying the Defendant the required upfront deposit, many of his victims never received the product or the training that they paid for as a condition of their employment.

To advance his fraud, the Defendant at times misrepresented his affiliation with Company A, a long-standing international company that designs and distributes various models of water machines and filtration systems. In order to deceive potential contractors by giving his operations the appearance of legitimacy, the Defendant repeatedly mischaracterized his relationship with, and his authority to act on behalf of, Company A and its products.

In addition, the Defendant misrepresented to sales contractors that their deposits would be securely held in escrow and subsequently refunded to them upon request, when, in fact, the Defendant either kept all of the sales contractors' money or, in other instances, despite their refund requests, the Defendant provided them with refunded payments that were late, incomplete, or both, or that were refunds actually funded by other sales contractors' money.

In order to conceal his fraud and to stave off scrutiny, the Defendant lulled his victimized sales contractors with bogus excuses as to why he was unable to fulfill his promises or to return their funds. In some instances, when victims complained or requested their money back, the Defendant sought to dissuade them from lodging their complaints elsewhere. In other instances, the Defendant simply stopped communicating with the victims altogether. However, knowing that his previous and existing sales contractors made virtually no money, among other unfulfilled promises, the Defendant nonetheless concealed those problems and continued to pitch his purported opportunities to other unsuspecting job applicants.

It was further part of his scheme that the Defendant would change his companies' names repeatedly to avoid any negative association with previous consumer complaints. However, in reality, the Defendant simply continued his fraudulent operations unabated while doing so under a new and different business name, unbeknownst to many of his existing and prospective sales contractors. The Defendant also routinely deceived job applicants and sales contractors by using aliases either to conceal his own conduct or to make his businesses appear larger and more legitimate to unsuspecting victims.

The Defendant admits that the electronic payment of money to him from victims constitutes an interstate wiring for the purpose of executing the scheme in violation of Title 18, United States Code, Section 1343. For example, as alleged in Count One, on or about June 20, 2019, the Defendant received a payment in the approximate amount of $4,980 from victim R.K. of Florida to his bank account.

In total, as a result of the Defendant's material misrepresentations and omissions, at least 250 victims were collectively defrauded of at least $600,000. However, rather than provide victims with the promised equipment or employment opportunities, the Defendant instead used much of the victims' funds for his own personal use and benefit or to refund some victims using other victims' money.

3.   **Waiver of Pretrial Motions**. The Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of the plea agreement, and based upon concessions of the United States within this plea agreement, the Defendant knowingly, willingly, and voluntarily gives up the right to

file any pre-trial motions in this case. The Defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The Defendant understands that he has the right to go to trial. At trial, the Defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The Defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The Defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the Defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The Defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the Defendant guilty without a trial.

5. **Additional Consequences.** The Defendant understands that as a result of his conviction, he could experience additional consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office.

6. **Statutory Penalties.** The parties agree that wire fraud, as charged in Count One of the Indictment, carries statutory penalties of:

    a.    a maximum term of imprisonment of 20 years in prison;

    b.    a supervised release term of up to three years;

    c.    a fine of up to $250,000, or twice the gross gain or loss from the offense, whichever is greater;

    d.    assessment to the Defendant of the costs of prosecution as authorized by 28 U.S.C. §§ 1918(b) and 1920; and

    e.    a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7.    **Revocation of Supervised Release.**  The Defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and the Defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The Defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

8.    **Guidelines Calculations.**  The parties acknowledge that the Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

    a.    Base Offense Level. The parties agree that the base offense level for wire fraud is 7. U.S.S.G. § 2B1.1(a)(1).

7

b.  Specific Offense Characteristics. The parties agree that the offense level should be increased by **14 levels** because the loss is more than $550,000, but not more than $1,500,000. U.S.S.G. § 2B1.1(b)(1)(H). In addition, the government reserves the right to argue that the offense level should be increased by **6 levels** because the offense resulted in substantial financial hardship to 25 or more victims. Instead, the Defendant reserves the right to argue that his offense should be increased by **2 levels** because it involved 10 or more victims. The parties agree that no other specific offense adjustments apply.

c.  Chapter 3 Adjustments. The government reserves the right to argue that the offense level should be increased by **2 levels** pursuant to U.S.S.G. § 3C1.1 because the Defendant (1) willfully obstructed or impeded (or so attempted) the administration of justice with respect to the investigation of the instant offense of conviction, and (2) the obstructive conduct related to the Defendant's offense of conviction. The Defendant reserves the right to argue this enhancement does not apply.

d.  Acceptance of Responsibility. The government agrees to recommend that the Defendant receive a **2-level** reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the Defendant has timely notified the government of his intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **1-level** reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the Defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the Defendant testifies truthfully during the change of plea and sentencing hearings; (2) the Defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the Defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report. Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the Defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

e.  Criminal History Category. The parties believe that, at the time of sentencing, the Defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The Defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the Defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f.  Guidelines Range. If, as the government reserves the right to argue, the adjusted offense level is **26 (7 + 14 + 6 + 2 − 3)**, and the criminal history category is **I**, the Sentencing Guidelines range is **63-78** months of imprisonment. If, as the Defendant reserves the right to argue, the adjusted offense level is **20 (7 + 14 + 2 − 3)**, and the criminal history category is **I**, the Sentencing Guidelines range is **33-41** months of imprisonment.

g.  Fine Range. If, as the government reserves the right to argue, the adjusted offense level is **26**, the Sentencing Guidelines fine range is **$25,000** to **$250,000**. U.S.S.G. § 5E1.2(c)(3). If, as the Defendant reserves the right to argue, the adjusted offense level is **20**, the Sentencing Guidelines fine range is **$15,000** to **$150,000**. U.S.S.G. § 5E1.2(c)(3).

h.  Supervised Release. The Sentencing Guidelines call for a term of supervised release of between one and three years for Count 18. U.S.S.G. § 5D1.2(a)(2).

9.  **Potential New Zero-Point Offender Guidelines Provision Under U.S.S.G. § 4C1.1.** The Court must apply the sentencing Guidelines Manual in effect as of the date of sentencing. U.S.S.G. § 1B1.11(a). However, the U.S. Sentencing Commission recently proposed a new provision of the United States Sentencing Guidelines that will call for a 2-level downward adjustment for defendants with zero criminal history points under some circumstances. Specifically, the proposed

9

provision, § 4C1.1, would provide a decrease of 2 levels from the offense level determined under Chapters Two and Three if the Defendant meets all of the following criteria: (1) the Defendant did not receive any criminal history points from Chapter Four, Part A; (2) the Defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the Defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the Defendant did not personally cause substantial financial hardship; (7) the Defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the Defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the Defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848. The Sentencing Commission has published this new provision for retroactivity consideration.

The proposed new provision will not take effect—if at all—until November 1, 2023. If the Defendant is sentenced after the new provision takes effect, the parties believe he may qualify for the 0-Point Offender Adjustment under § 4C1.1. Specifically, the parties agree that, if the Court finds that the Defendant personally caused substantial financial hardship, then this two-level reduction does not apply.

10

However, if the Court finds that the Defendant did not personally cause substantial financial hardship, the parties agree that this two-level reduction applies and the Defendant's total offense level is decreased by two levels. With the application of this reduction, then: (a) the Defendant believes this results in total offense level of 18 and a Guidelines range of 27 to 33 months of imprisonment, whereas (b) the government believes this results in a total offense level of 24 and a Guidelines range of 51 to 63 months of imprisonment.

If the Defendant is sentenced before November 1, 2023, the Defendant may seek a variance from his otherwise-applicable Guidelines range based on the proposed U.S.S.G. § 4C1.1. If the Court finds that the Defendant did not personally cause substantial financial harm, then the government agrees to support the variance and to ask the Court to sentence the defendant as if U.S.S.G. § 4C1.1 had taken effect on the express condition that the defendant agrees that he will not later seek, by any means, including through a motion pursuant to 18 U.S.C. § 3582(c), a further reduced sentence on the basis that the new § 4C1.1 was inapplicable at the time his sentence was imposed, even if the proposed version of § 4C1.1 is made retroactive.

This provision will not apply if, between now and the date of sentencing, the proposed amendments are rejected by proper authority or withdrawn by the U.S. Sentencing Commission.

10. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the

Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines. If the Court determines that the applicable guideline calculations or the Defendant's criminal history category are different from that stated above, such a determination shall not provide a basis for the parties to withdraw from this agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

11.  **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make a motion for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the Defendant will have no right to withdraw his guilty plea.

12.  **Special Assessment**. The Sentencing Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the Defendant is convicted. U.S.S.G. § 5E1.3. The Defendant agrees that the special assessment is due and payable at the time of sentencing.

13.  **Restitution Agreement**. The Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to make restitution to the victims of his crime. The Defendant understands and agrees the Court may order the defendant to make

restitution to any victim of the scheme regardless of whether the victim was named in the Indictment. The Defendant agrees that he owes restitution in the amount of at least $638,739.

14.   **Disclosure of Assets.**  The Defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the Defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the Defendant. The Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of fines and/or forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The Defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the Defendant's assets and expressly authorizes the United States to obtain a credit report on the Defendant to evaluate his ability to satisfy financial obligations imposed by the Court. If requested by the United States, the Defendant agrees to submit to one or more asset interviews or depositions under oath.

15.   **Forfeiture.**  The Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud, as charged in Count One of the Indictment.

The Defendant consents to the entry of a money judgment forfeiture in the amount of $638,739, and agrees that the amount of proceeds he obtained, directly or indirectly, from the wire fraud scheme alleged in Count One of the Indictment equals or exceeds this amount. The United States reserves the right to seek forfeiture of substitute assets and any additional directly forfeitable property.

The Defendant waives all statutory and constitutional defenses to the forfeitures described herein and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeitures on any grounds.

16. **Waivers of Appeal and Collateral Attack.** The Defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes, but is not limited to, the Defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statutes to which the Defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by Defendant of the substantive reasonableness of a term of imprisonment above the high end of the Guidelines range of imprisonment. The Defendant also waives the right to petition under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel.

The Defendant has discussed these rights with his attorney. The Defendant understands the rights being waived, and the Defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the United States may appeal the substantive reasonableness of a term of imprisonment below the low end of the Guidelines range of imprisonment.

17.     **FOIA Requests.** The Defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18.     **Complete Agreement.** The Defendant acknowledges that he has read this plea agreement and has carefully reviewed each provision with his attorney. The Defendant further acknowledges that he understands and voluntarily accepts every term and condition of this plea agreement. This plea agreement, along with any agreement signed by the parties before entry of the plea, is the entire agreement and understanding between the United States and the Defendant.

Dated: 9/27/23

ANDREW M. LUGER
United States Attorney

BY: MATTHEW S. EBERT
Assistant United States Attorney

Dated: 9/27/23

CHARLES EDWARD FIELDS
Defendant

Dated: 9/27/23

JOSEPH S. FRIEDBERG
Counsel for Defendant

15